SO ORDERED.

Dated: December 7, 2018

Daniel P. Collins, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Proceedings |
| | ) | |
| SWIFT AIR, LLC, | ) | Case No.: 2:12-bk-14362-DPC |
| | ) | |
| Reorganized Debtor. | ) | Adversary No. 2:14-ap-00534-DPC |
| | ) | |
| | ) | |
| MORRISANDERSON & ASSOCIATES, | ) | **UNDER ADVISEMENT ORDER** |
| LTD., Litigation Trustee for the | ) | |
| Reorganized Debtor, | ) | |
| | ) | **[NOT FOR PUBLICATION]** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REDEYE II, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before this Court is the Motion ("Motion") of Defendants Jerry Moyes ("Moyes") and J. Kevin Burdette ("Burdette") ("Defendants") for Report and Recommendation for Partial Summary Judgment on Count Six and Request for Judicial Notice.[1] In summary, Defendants contend Plaintiff's claims for breach of fiduciary duty were released by the Debtor before this bankruptcy and are barred by the doctrine of *in pari delicto*. Based on the record before this Court, the Motion is denied.[2]

---

[1] DE 270. DE will hereinafter refer to docket entries in this adversary case 2:14-ap-00534-DPC.
[2] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

1

## I. BACKGROUND

Swift Air, LLC ("Debtor") filed its voluntary chapter 11 bankruptcy on June 27, 2012 ("Petition Date"). Plaintiff, MorrisAnderson & Associates, Ltd. ("Trustee"), was appointed trustee of the creditor trust that was created by the Third Amended Plan of Reorganization ("Plan") confirmed by this Court's Plan Confirmation Order.[3] The Trustee commenced this adversary proceeding ("Adversary Proceeding") on June 27, 2014. The Trustee's Third Amended Complaint ("Complaint")[4] contains 11 claims for relief. Count Six is for claimed breaches of fiduciary duties by the Defendants. In summary, Count Six claims the Defendants caused the Subject Transfers[5] to occur for their own personal benefit and to the detriment of Debtor's creditors thereby depriving Debtor of its ability to operate as a going concern. Moyes and Burdette were the President and Vice-President, respectively, of the Debtor until their resignations on December 21, 2011 ("Transaction Date").

The Trustee filed a response ("Response")[6] to the Motion. Defendants replied to the Response ("Reply")[7]. Defendants filed their separate statement of facts.[8] Plaintiff filed a separate statement of facts.[9] Defendants also filed a demonstrative chart comparing fact differences between Plaintiff's and Defendants' filings.[10] Oral argument on the Motion was held by the Court on October 18, 2018, after which the Court took this matter under advisement.

---

[3] Admin DE 662. "Admin DE" will hereinafter refer to docket entries in the administrative case 2:12-bk-14362-DPC.
[4] Filed November 3, 2015, at DE 94.
[5] Defined in the Complaint at p. 10, ¶ 73.
[6] DE 320.
[7] DE 336.
[8] DE 271.
[9] DE 278.
[10] DE 319.

## II. JURISDICTION

This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b)(2) and 1334 and Bankruptcy Rules 7001, et seq.

## III. ANALYSIS

Summary judgment shall be granted by this Court if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Bankruptcy Rule 7056 and Rule 56 of the Fed. R. Civ. P.

A. Defendants' Motion

Defendants' Motion points to an "Inter-Company Settlement Agreement and Mutual Release" ("Settlement Agreement") dated December 21, 2011[11] that was executed by the Debtor, on one hand, and the Defendants (and others), on the other hand. The Settlement Agreement was one of many documents executed on the Transaction Date as a part of a larger transaction ("Transaction") memorialized in, among other documents, a Purchase Agreement ("Purchase Agreement").[12] At bottom, the Transaction resulted in 1) Debtor's Part 135 Business[13] being transferred to Swift Aircraft Management, LLC ("SAM") and Swift Aviation Group ("SAG")[14], 2) Debtor's Part 121 Business[15] remaining with the Debtor, and 3) the owner of the Debtor (SAG) transferring its equity in the Debtor to the Buyers.[16] The Part 135 Business included Debtor's Federal Aviation Administration ("FAA") Part 135 certificate and various receivables owed to Moyes and

---

[11] DE 321-2, pp. 11 through 18 of 100.
[12] The Purchase Agreement is attached as Exhibit 5 to the Defendants' Statement of Facts (DE 271-3, pp. 1-182).
[13] Defined in the Purchase Agreement at p. 6. See DE 271-3, p. 12 of 182. See also the Complaint (DE 94) at p. 5, ¶ 23.
[14] See the Motion, ¶ 27, p. 6 of 16 (DE 270) and Defendants' Statement of Facts, ¶ 27 (DE 271).
[15] Defined in the Purchase Agreement at p. 6. See DE 271-3. See also the Complaint at ¶ 23, p.5.
[16] In the Motion, the "Buyers" are defined as arm length entities named Avondale Aviation II, LLC and Jordon Gunthrope Holdings, LLC. In the Purchase Agreement they are defined as "Purchaser." See DE 271-3, p.7.

his Seller Affiliates[17] and payables owned by Moyes and his Seller Affiliates. The Part 121 Business, which remained with the Debtor, included an FAA Part 121 certificate and payables generally associated with the Debtor's Part 121 Business. The consideration paid by the Buyers was $100.

A "condition precedent" to Buyers' purchase of SAG's ownership of Debtor was the execution of the Settlement Agreement calling for ". . . any and all of Swift's [Debtor's] debts to Seller,[18] Moyes and Seller's Affiliates be settled and/or released prior to Closing." Moyes owned SAG, SAM and the Seller Affiliates.[19]

Section 4 of the Settlement Agreement states:

> Section 4. <u>Mutual Release</u>.
>
> Subject to terms set forth in Section 2, the [sic] Swift[20] on the one side and Seller Parties[21] on the other side, and their respective members, managers, stockholders, directors, officers, partners, employees and agents, hereby mutually release one another from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions, duties, obligations, indemnities, claims and demands whatsoever, in law or equity which the Parties[22] and their respective directors, officers, partners, employees and agents shall or may have, for, upon or by reason of the amounts, accounts receivables, debts and obligations described in Section 2, from the beginning of the world to the Closing[23].

---

[17] This term is referenced in the Settlement Agreement but is not defined there nor could the Court find where it is separately defined in the Purchase Agreement with reference to particular names. However, "Affiliate" is defined in the Purchase Agreement (DE 271-3, pp. 7-8 of 182).
[18] SAG is defined as "Seller" in the Settlement Agreement.
[19] See Complaint, ¶¶ 8-17 (DE 94).
[20] The term "Swift" refers to the Debtor.
[21] The term "Seller Parties" included Moyes and Burdette.
[22] The term "Parties" refers to Debtor and all the Seller Parties.
[23] The term "Closing" is not defined in the Settlement Agreement. Rather, the Settlement Agreement indicates that capitalized terms not defined in the Settlement Agreement "shall have the meaning assigned to such term in the Purchase Agreement." See the third "whereas" paragraph on p. 1 of the Settlement Agreement. "Closing" is then defined in Article 1 of the Purchase Agreement (DE 271-3, p. 8 of 182).

4

Section 2 of the Settlement Agreement limits the otherwise broad language of the Section 4 Mutual Release. Section 2 states, in relevant part,

> Section 2. <u>Settlement Terms</u>.
>
> The Parties hereby agree that any and all amounts, accounts receivables, debts and obligations, whatsoever, owed and unpaid by Swift to any Seller Party and any and all amounts, accounts receivables, debts and obligations, whatsoever, owed and unpaid by any Seller Party to Swift, in both cases prior to and until, but not after, the Closing, be and they hereby are fully settled and released, provided, however, that Seller may request that Swift, in lieu of releasing amounts due by a Seller Party to Swift, assign such amount to Seller or Management. . . . The Seller Parties represent, warrant and covenant that there are no other Affiliates[24] of the Seller Parties to whom any amount, account receivable, debt or other obligation is owed by Swift at the time of the Closing, and the Seller, SAS, Sales and Management, jointly and severally, will indemnify Swift against any Losses for any such claim from an Affiliate of the Seller Parties who is not a Party to this Agreement. Notwithstanding the foregoing, Seller may request that Swift, in lieu of releasing any amount due by a Seller Party to Swift with respect to the Part 135 Business, assign such amount to Seller or to Swift Aircraft Management, L.L.C.[25]

Defendants contend the Section 4 <u>Mutual Releases</u> portion of the Settlement Agreement, even when read with the limitations of the Section 2 <u>Settlement Terms</u>, released <u>all</u> of the Debtor's claims against the Defendants, including the breach of fiduciary duty claims asserted by the Trustee in Count Six of the Complaint. The Defendants further contend that, having released all claims against the Defendants prior to the Petition Date, the Debtor's bankruptcy estate could not have included such breach of fiduciary duty claims. The Trustee, therefore, could not assert claims against the Defendants that the Debtor itself did not hold on the Petition Date. Moreover, Defendants

---

[24] Again, "Affiliates" is defined in Article 1 of the Purchase Agreement. See footnote 16, above.
[25] The various entities mentioned in Section 2 <u>Settlement Terms</u> are defined in the Settlement Agreement.

contend no creditors of the Debtor assigned their breach of fiduciary duty claims (if any) to the Trustee so the Trustee has no standing to bring causes of action based on Defendants' alleged breaches of their fiduciary duties. Defendants claim the doctrine of *in pari delicto* bars Count Six and those claims must be dismissed.

B. Plaintiff's Responses in Opposition to the Motion.

Page two of the Trustee's Response neatly summarizes the Trustee's 11 points in opposition to the Motion. Those points, and the Court's findings on each point, are addressed below in the order of the Trustee's presentation.

Point 1. Release is an affirmative defense that was waived by Defendants because they did not assert it in their Answer[26] to the Complaint.[27]

Plaintiff is correct in noting Bankruptcy Rule 7008(c)(1) identifies "release" as an affirmative defense that must be pled in an answer to a complaint. However, Defendants' Answer essentially did plead the affirmative defense of release when it stated:

. . .

> 4. The Trustee's claims have been waived as a result of the acts and conduct of the Trustee.

. . .

> 6. The Trustee's claims are barred by the doctrine of estoppel.[28]

The fact that Defendants' Answer did not specifically mention Sections 2 or 4 of the Settlement Agreement or even generally reference the Settlement Agreement is not fatal. A defendant need provide only fair notice of an affirmative defense. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010). Defendants' Answer provided

---

[26] The Answer is at DE 95.
[27] See Section IV(A) of the Response beginning at p. 6 (DE 320).
[28] Answer, p. 27 (DE 95).

sufficient notice that Trustee's claim for breach of fiduciary duty was "waived" and that Trustee was "barred by the doctrine of estoppel" from pursuing this released claim. This Court finds that use of the magic word "release" is not required by Bankruptcy Rule 7008(c) to constitute an effectively pled affirmative defense of release. This notion is buttressed by the Rule 8(e) admonition that a "pleading must be construed so as to do justice." Fed. R. Civ. P. 8(e).

Even were this Court to find that the waiver and estoppel language used in Defendants' Answer was inadequate to raise "release" as an affirmative defense, this Court finds Plaintiff was not harmed or prejudiced by Defendants failure to use the exact word "release." A trial date for this Adversary Proceeding has been set to begin February 11, 2019, but the Motion was filed in April 2018. Since at least the date the Motion was filed, Plaintiff has become well aware of the language of the Settlement Agreement and Defendants' contentions as to the impact of the release language in the Settlement Agreement. While the discovery bar date has passed, discovery could and should have been explored by Plaintiff on the question of what facts Defendants had in support of their waiver and estoppel affirmative defenses. In discovery responses, Defendants would naturally have pointed the Trustee to the Settlement Agreement, particularly the release language of Sections 2 and 4. The Trustee is now armed with knowledge of the need at trial to introduce facts contesting Defendants' claimed release. Since the Trustee has not suffered prejudice by the affirmative defense of "release" having arguably not been pled prior to Defendants' Motion, this Court rejects Plaintiff's contention that the affirmative defense of release has been waived by Defendants. See *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997) (courts have discretion to allow a defendant to plead an affirmative defense for the first time in a motion for summary judgment).

Point 2. The releases contained in the Settlement Agreement are avoidable as intentionally or constructively fraudulent transfers.[29]

Plaintiff claims the releases in the Settlement Agreement are avoidable fraudulent transfers because $12,151,240 in receivables were transferred by the Debtor to SAG and SAM for no consideration or for less than reasonably equivalent value at a time when Debtor was insolvent or rendered insolvent by the Transaction. Plaintiff cites *In re Yellowstone Mountain Club*, 436 B.R. 548 (Bankr. D. Mont. 2010) for the proposition that a release may be the subject of a fraudulent transfer avoidance action.

While granting a release may well constitute an avoidable actual or constructive fraudulent transfer, the Trustee has not brought an action to avoid the Settlement Agreement or any component of that agreement. The time for the Trustee to bring a cause of action for avoidance of fraudulent transfer (or to rescind the Settlement Agreement) has long been barred by the applicable statute of limitations. This Court rejects that portion of Point 2 of Plaintiff's Response.

Moyes' Motion is entirely predicated on the enforceability of the Settlement Agreement and the contention that Sections 2 and 4 have released Moyes of the breach of fiduciary duty claims contained in Count Six of the Complaint. In essence, Defendants contend the Trustee is time barred from asserting any defenses to the enforceability of the release provisions contained in the Settlement Agreement. However, Plaintiff need not file causes of action to avoid the Settlement Agreement as a fraudulent transfer or to rescind that contract as unsupported by consideration in order to dodge the impact of the claimed release. At trial, the Defendants will surely claim the Trustee's Count Six claims have been released. Defendants must carry the burden of demonstrating their affirmative defenses of release, waiver and/or estoppel. *Estate of Page v. Litzenburg*, 865 P.2d 128, 135 (Ariz. App. 1993). Based on the record before this Court, no proof of consideration

---

[29] See Section IV(B) of the Response beginning at p. 7 (DE 320).

from Moyes to the Debtor supports Moyes' implied contention that the Settlement Agreement (as it pertains to him) was based on any consideration (or at least any consideration of value) from Moyes to the Debtor. This Court is not aware of any claims Moyes personally held against the Debtor when the Settlement Agreement was executed. If this is so, Moyes' waiver or release of any claims against the Debtor may not constitute consideration. As to Burdette, he is not a signatory to the Settlement Agreement. He presumably provided no release or any other consideration (valuable or otherwise) to the Debtor. Nor is Burdette named as receiving a release from the Debtor. He may be an "officer" of a released party under the Settlement Agreement but nothing before this Court suggests consideration was given by him for a release of claims the Debtor may have against him. Genuine material of fact issues remain as to the enforceability of the release provisions of the Settlement Agreement.

In a sense, Defendants suggest their release affirmative defense cannot itself be met with the Trustee's defenses to the claimed release. However, there is a difference between asserting a time barred cause of action and asserting an affirmative defense to the enforceability of a contract. *See McQueen v. First Nat. Bank of Mesa, Ariz.*, 36 Ariz. 74, 89 (1929) (note claims barred by statute of limitations may nevertheless be successfully pled as a defense.).[30] It is not surprising that Plaintiff's Complaint does not seek to invalidate the Settlement Agreement because, absent Defendants asserting the affirmative defenses of waiver, release, estoppel and *in pari delicto*, the Trustee's Complaint would have no occasion to challenge the Settlement Agreement. Now that the Defendants have

---

[30] The *McQueen* case was mentioned by District Court Judge Marquez in a case where a plaintiff brought numerous causes of action, including a claim for breach of contract. *Tucson Electric Power v. Westinghouse Elec.*, 597 F.Supp. 1102, 1105 (D. Ariz. 1984). In *Tucson Electric Power*, the defendant filed a motion for summary judgment. The plaintiff responded claiming the agreement at issue was unconscionable and, therefore, unenforceable. Plaintiff claimed it was asserting unconscionability in a defensive manner so it was not barred by the statute of limitations. The Court disagreed finding the theory was used offensively as another theory to prosecuting its breach of contract claims. The court applied the statute of limitations to bar the offensive use of the unconscionability claim. Unlike *Tucson Electric Power*, the Trustee here is defending against the enforceability of the Settlement Agreement and release. The Trustee's theory of unenforceability is not being used to assert an affirmative claim for relief to avoid or invalidate the Settlement Agreement.

squarely raised these affirmative defenses, the Trustee's Response properly raises defenses to the enforceability of the Settlement Agreement. The Trustee is raising his shield to the Settlement Agreement's release provisions but is not pursuing causes of action to avoid or rescind the release.

When Defendants' Reply claims the release provisions of Settlement Agreement are enforceable because the Trustee is barred by the statute of limitations to challenge its enforceability, the Defendants are using their affirmative defenses and the statute of limitations as a weapon. Statute of limitation defenses exist to serve as shields not swords. *See City of Saint Paul, Alaska v. Evans*, 344 F.3d 1029, 1033 (9th Cir. 2003):

> [c]ourts generally allow defendants to raise defenses that, if raised as claims, would be time-barred . . . Without this exception, potential plaintiffs could simply wait until all available defenses are time-barred and then pounce on a helpless defendant. *See Western Pac. R.R. Co.*, 352 U.S. at 71, 77 S.Ct. 161.

*City of Saint Paul* at 1033-4. A simple example is in order. If a plaintiff fraudulently induced a defendant into signing a promissory note but then does not seek to enforce that note until five and a half years after the note becomes due,[31] the defendants must be entitled to challenge the enforceability of the note on grounds of plaintiff's fraud, even when an affirmative claim for fraud would be barred by a three-year statute of limitations.[32] Were it otherwise, a fraudster could enforce a fraudulently obtained note by simply waiting for the fraud statute of limitations to expire.

The crucial question, then, is whether a plaintiff's defenses to defendants' affirmative defenses can be time barred by a given statute of limitations. This Court answers that question in the negative.

---

[31] Arizona's breach of contract statute of limitations is six years. See A.R.S. § 12-548(A)(1).
[32] Arizona's fraud statute of limitations is three years. See A.R.S. § 12-543(3).

10
Case 2:14-ap-00534-DPC    Doc 418    Filed 12/07/18    Entered 12/07/18 12:30:22    Desc
Main Document    Page 10 of 20

Genuine issues of fact exist concerning the consideration Defendants paid (if any) to Debtor to gain the Debtor's release of claims against them. Genuine issues of fact also exist concerning whether the Trustee can successfully defend against the enforceability of the Settlement Agreement by demonstrating the releases are avoidable fraudulent transfers. If Moyes is party to a release or waiver of claims which are unenforceable against the Debtor then Defendants cannot carry their burden of proof on their affirmative defenses. Genuine issues of material facts exist on the enforceability of Defendants' affirmative defenses of release, waiver, estoppel and *in pari delicto*. The Motion is denied.

Point 3. The releases contained in the Settlement Agreement do not include releases of Debtors' breach of fiduciary duty claims against the Defendants.[33]

The Trustee notes that the release in Section 2 of the Settlement Agreement "is limited to accounts receivable and debts . . . that were *owed* and *unpaid* by a seller party (i.e. Moyes) to the Debtor."[34] Since the Trustee's breach of fiduciary duty claims are unliquidated and contingent, the Trustee suggests these debts were not "owed and unpaid" and, therefore, not released. The Trustee also contends that, since the Seller could request the "amount" of claims released by the Debtor be assigned at the Seller's request, the "amount" must be a fixed debt, not a contingent and unliquidated claim. Furthermore, the Trustee suggests breach of fiduciary duty claims "likely are not assignable under Arizona law. *Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 140 (App. 1996)."[35]

Among other things, the Defendants contend that the Debtor's schedules and statements do not reflect Debtor's claims against the Defendants, thereby supporting the notion that the Debtor's claims against them were released prior to the Petition Date.

---

[33] See Section IV(c) of the Response beginning at p. 8 (DE 320).
[34] Response, p. 8, ll. 14-15 (DE 320).
[35] DE 320, pp. 8-9.

11

Whether a debtor fully discloses the existence of an asset is, of course, not determinative of whether that asset exists.

This Court agrees that, in the context of the Transaction, Debtor's breach of fiduciary duty claims against Defendants are not "amounts, accounts receivables, debts or obligations . . . owed and unpaid by any Seller Party to [Debtor]."[36] Moreover, while Section 4 of the Settlement Agreement purports to provide Debtor's release of Moyes (as a Seller Party) and Burdette (as an officer, director, employee, etc. of a Seller Party), the broad release language in the Section 4 is "[s]ubject to terms set forth in Section 2." The Court reads the "subject to" language to limit the broad releases of Section 4 to release only the types of claims quoted in Section 2. In other words, the Section 2 release language does not release Defendants of Debtor's breach of fiduciary duty claims against them and the release language in Section 4 is limited to only those items released in Section 2.

This Court's reading of the Settlement Agreement gives weight to the notion that, for the price of $100, the Transaction was designed to give Buyers the Part 121 Business while transferring the Part 135 Business to Moyes and his entities. Granting mutual releases so that the Part 135 Business and Part 121 Business are segregated makes sense. Granting releases which would not further that goal does not appear to be intended or agreed upon. Paragraph 2.4(c) of the Purchase Agreement does not bolster Defendants' contention that the Debtor released Defendants of claims it may have for Defendants' breaches of fiduciary duties. Nothing this Court has been provided by the parties confirms that Moyes or Burdette bargained for an exoneration of claims the Debtor had or might have against them based on alleged breach of fiduciary duties they may have owed to the Debtor.

---

[36] Settlement Agreement, Section 2, ll. 1-4.

The record compels the Court to read the Settlement Agreement as not releasing Debtor's breach of fiduciary duty claims against Defendants. This alone constitutes grounds to deny Defendants' Motion. If the Court is mistaken in its reading of the Settlement Agreement, the Court then finds the language of the Settlement Agreement is ambiguous and evidence is needed to ascertain the intent of the parties in the language contained in Sections 2 and 4 of the Settlement Agreement. The Motion is, therefore, denied.

Point 4. Since the Debtor was insolvent at the time of the Transaction, the Trustee can assert breach of fiduciary duty claims on behalf of Debtor's creditors.[37]

The Trustee claims Debtor was insolvent at the time of the Transaction and, therefore, it's insiders owed fiduciary duties to Debtor's creditors. The Trustee cites *Southwest Supermarkets, LLC*, 325 B.R. 417, 425 (Bankr. D. Ariz. 2005)[38] for the proposition that the Trustee can "assert breach of fiduciary duty claims on behalf of the creditors as a class (but not individually for specific harms) under Bankruptcy Code § 544(a)."[39]

Defendants question the Trustee's assertion that members or officers of an LLC have a fiduciary duty to an LLC's creditors when the LLC becomes insolvent.[40] While the Court fails to see why the structure of a debtor entity should matter in this context, it does not resolve this question today because, more compelling, Defendants correctly note that the breach of fiduciary duty claims asserted by the trustee in *Southwest Supermarkets* were assigned by creditors to that trustee.[41] This makes all the difference. Absent an

---

[37] See Section IV(D) of the Response beginning at p. 12 (DE 320).
[38] The chapter 11 trustee in the *Southwest Supermarkets, LLC* case is well known to this Court.
[39] DE 320, p. 12.
[40] See Reply, p. 12, fn 6 (DE 336).
[41] The assignability of such claims is questioned by the Trustee in the Response at p. 8 and mentioned above at Point 3. That was not at issue in the *Southwest Supermarkets* case.

13

assignment of a creditor's breach of fiduciary duty claims against the Debtor's insiders, the Trustee cannot pursue such creditor claims against these Defendants. The Court rejects the Trustee's Point 4.

Point 5. Moyes breached the Purchase Agreement by failing to pay a claim the Seller Parties agreed to pay so the releases in the Settlement Agreement are unenforceable.[42]

The Trustee contends the Seller Parties failed to pay Debtor's debts to Balkan (and perhaps others), debts which they agreed to assume in taking over the Debtor's Part 135 Business. The Trustee suggests a fact issue exists as to whether the Settlement Agreement's release provisions are, therefore, unenforceable due to the Seller Parties' material breaches of contract.

Defendants counter this argument by noting the Complaint contains no count for breach of contract and suggest the applicable statute of limitations would bar such claims. Defendants also suggest there may not be a failure to pay Balkan or other claims of the Part 135 Business.

As with Point 2 above, if Defendants' affirmative defenses of release, waiver, estoppel and *in pari delicto* are to stand, Defendants carry the burden of proving the enforceability of the Settlement Agreement.

Genuine material factual issues exist as to breaches by the Seller Parties of the Purchase Agreement and as to the enforceability of the releases contained in the Settlement Agreement. For these reasons, the Motion is denied.

---

[42] See Section IV(c)(3) of the Response, beginning at p. 11 (DE 320).

Point 6. Defendants breached their fiduciary duties by entering into the Settlement Agreement.[43]

The Trustee claims the Settlement Agreement was entered into when the Debtor was insolvent and Defendants caused it to be executed so they could strip out of the Debtor the Part 135 receivables totaling $12,151,240 and to simultaneously gain from the Debtor releases for their breaches of fiduciary duties to the Debtor. The Trustee says Defendants caused this to occur at a time when Debtor did not have the benefit of independent counsel and where Defendants stood on both sides of the Settlement Agreement.

This point draws a particularly vehement reply from Defendants.[44] Defendants argue that the Debtor not only gave up receivables, it was also relieved of over $13 million in payables. Defendants claim that Count Six of the Complaint does not allege the Debtor's execution of the Settlement Agreement was itself a fiduciary breach and it is now too late to add such a cause of action. The Defendants also suggest the Trustee seeks only to avoid inconvenient aspects of the Transaction rather than all of the Purchase Agreement or the Settlement Agreement. Most urgently, the Defendants argue Mr. Ehrlich represented the Debtor in the Transaction and this Court said as much in its February 22, 2017 Order.[45]

It is true that the Transaction not only transferred over $12 million in receivables to SAG and SAM, but it also called for significant assumption of Debtor's obligations. Whether the payables assumed were of equal or greater value is an open question. What is not open to question is that the Trustee is time barred from asserting a cause of action against the Defendants for breaching their fiduciary duties by entering into the Settlement Agreement. As to the Ehrlich Firm's representation of the Debtor and SAG, the Court has already ruled on that matter.

---

[43] Section IV(E) of the Response, p. 12 (DE 320).
[44] See Section II(F) of the Reply, beginning at p. 12 (DE 336).
[45] DE 182, p.3.

15

Whether Defendants are entitled to enforce the release provisions of the Settlement Agreement is hotly contested in the Trustee's defenses against that agreement. The Motion is denied as genuine issues of material facts remain concerning the enforceability of these releases.

Point 7. *In Pari Delicto* is an affirmative defense waived by Defendants because it was not asserted as such in their Answer to the Complaint.[46]

As with the affirmative defense of release (see Point 1, above), Defendants did not use the magic Latin phrase "*in pari delicto*" in their Answer. Rather, they stated:

> 13. Any injury or damages allegedly suffered by Debtor was caused by Debtor's own culpable conduct and accordingly, Trustee is barred from any recovery against Defendants or, alternatively, any recovery which might otherwise be had by Trustee should be reduced and diminished to the extent that Debtor's culpable conduct caused or contributed to any damages or injury that Debtor may have sustained.

The above quoted affirmative defense captures the essence of the affirmative defenses of *in pari delicto*, contributory negligence or comparative negligence. Defendants have not waived these affirmative defenses. See Point 1, above. However, even if *in pari delicto* was not properly raised in their Answer, Defendants' Motion does so explicitly. As with Point 1, above, Plaintiff has not demonstrated that it has been harmed or prejudiced by Defendants' delay in explicitly stating the *in pari delicto* affirmative defense. Plaintiff's discovery to date could or should have fully explored the basis for this affirmative defense. Discovery would have explicitly revealed Defendants' intended use of the *in pari delicto* defense.

The Court rejects Trustee's Point 7.

---

[46] See Section V(A) of the Response, beginning at p. 13 (DE 320).

16

Point 8. *In Pari Delicto* does not apply to claims asserted against corporate insiders like the Defendants.[47]

The Trustee cites several cases for the proposition that "the *in pari delicto* defense does not apply to self-dealing and breach of fiduciary duty claims brought by a trustee against corporate fiduciaries."[48] None of the cases cited by the Trustee are from the 9th Circuit, the 9th Circuit BAP or the Arizona District Court.

Defendants counter by noting the cases cited by the Trustee on this issue involved corporate insiders who controlled both sides of a debtor's transactions, whereas the Transaction at issue involved unrelated arms-length third parties. Defendants also cite cases that are not binding on this Court.

Defendants' Motion cites this Court's *Kohner* decision where the court applied the doctrine of *in pari delicto* to bar a Trustee's claim for conspiracy to make fraudulent transfers.[49] *Kohner* is inapposite to the case at bar because it involved a cause of action brought by the Trustee that the debtor itself could not bring. Here, the Trustee defensively contends that the contract that Defendants seek to enforce is unenforceable. *See In re Kohner*, 2:13-ap-00199-DPC, DE 184 (order dated September 11, 2014).

On the face of things, it appears the Buyers and Sellers in the subject Transaction negotiated at arms length to effectuate a mutually beneficial deal. That, however, presumes the Debtor was fully controlled in the Transaction by the Buyers.

The Trustee claims the Debtor was controlled by the Seller Parties (including the Defendants) and that Defendants breached their fiduciary duties to Debtor in directing the stripping of valuable receivables out of the Debtor and for the Defendants' benefit. If the Transaction is viewed as a whole series of independent steps memorialized by a number of separate documents one might come to the Defendants' perspective. However, if the

---

[47] See Section V(C) of the Response, beginning at p. 14 (DE 320).
[48] *Id*.
[49] See footnote 7 at p. 13 of the Motion (DE 270).

17

Transaction and all its component documents are viewed as a unified whole it is possible to see the Trustee's perspective that the Defendants caused the Debtor to be stripped of its economic future as a result of the Transaction. The Court need not presently decide whether *in pari delicto* applies to the Defendants in this case as there remain material and genuine factual issues on the question of whether and to what degree Debtor's transfers and the Transaction (or parts of the Transaction) were compelled by Defendants and constitute their self-dealing and/or a breach of fiduciary duties.

The Motion is denied as it pertains to the Defendants' *in pari delicto* affirmative defense.

Point 9. The *In Pari Delicto* defense does not apply where the Debtor itself did not engage in intentional or fraudulent conduct.[50]

The Trustee correctly translates the Latin phrase "*in pari delicto*" as "at equal fault." The Trustee then questions where the Defendants have cited to facts suggesting the Debtor committed an intentional tort. If the Debtor has committed no wrongdoing, *in pari delicto* should not apply, says the Trustee.

The Defendants Reply to this argument is that the parties to the Transaction were unrelated, they stood on equal footing and if there is any fault it is equal.[51]

For the reasons stated in Point 8 above, the Court denies the Motion.

Point 10. The *In Pari Delicto* defense does not apply where the Debtor did not benefit.[52]

The Trustee claims Moyes' conduct (i.e., claimed breach of fiduciary duty) did not benefit the Debtor but, rather, Moyes' gain (i.e., the receivables acquired) caused Debtor's

---

[50] See Section V(B) of the Response, beginning at p. 14 (DE 320).
[51] See Section II(I) at pp. 16-17 of Defendants' Reply (DE 336).
[52] See Section V(C) of the Response, 2nd paragraph beginning at p. 15 (DE 320).

loss. The Trustee also discredits cases cited by the Defendants as inapposite cases involving Ponzi schemes and non-insiders.

The Defendants claim the releases from and debt assumption by the Seller Parties benefited the Debtor to the same degree the Debtor was burdened. Twelve million in receivables went to the Seller Parties but they also took over $13 million of the Debtor's liabilities.

The issue is discussed above in Point 8. For the same reasons stated above, the Motion is denied.

Point 11. The *In Pari Delicto* defense is not applicable where the Defendants' fault is not relatively equal to the Debtor's fault.[53]

In the Response and at oral argument, the Trustee hammered home the notion that the *in pari delicto* defense starts with relative equality of fault. Here, the Trustee claims any fault of the Debtor is greatly outweighed by Defendants' wrongs so *in pari delicto* is inapplicable. At best, the Trustee suggests contributing negligence or comparative negligence would apply.

Defendants claim there is no fault of the Defendants but if there was fault it was no greater than the Debtor's and that the Debtor independently and at arms-length agreed to the Settlement Agreement and the Purchase Agreement.

For the reasons stated in Point 8 above, the Court denies the Motion.

## V. **CONCLUSION**

The Court finds the Settlement Agreement does not release the Debtor's breach of fiduciary duty claims against the Defendants. Even if the Settlement Agreement does release such claims, the foundation for Defendants' Motion is their claimed enforceability

---

[53] See Section V(D) of the Response, beginning at p. 15 (DE 320).

19

Case 2:14-ap-00534-DPC    Doc 418    Filed 12/07/18    Entered 12/07/18 12:30:22    Desc
Main Document    Page 19 of 20

of the Settlement Agreement and the releases set forth in that agreement. If the releases are not enforceable, the affirmative defenses of release, waiver, estoppel and *in pari delicto* fail. Genuine issues of material fact exist as to the Trustee's defenses to the enforceability of the Settlement Agreement.

**IT IS ORDERED** Defendants' Motion for Summary Judgment is hereby denied.

**DATED AND SIGNED ABOVE.**

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to interested parties.