SO ORDERED.

Dated: March 15, 2019

Daniel P. Collins, Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 11 Proceedings |
| | ) |
| SWIFT AIR, LLC, | ) Case No.: 2:12-bk-14362-DPC |
| | ) |
| Reorganized Debtor. | ) Adversary No. 2:14-ap-00534-DPC |
| MORRISANDERSON & ASSOCIATES, | ) |
| LTD., Litigation Trustee for the | ) **ORDER REGARDING AUTHORITY** |
| Reorganized Debtor, | ) **TO ENTER FINAL ORDERS IN THIS** |
| | ) **ADVERSARY PROCEEDING** |
| Plaintiff, | ) |
| | ) |
| v. | ) **[NOT FOR PUBLICATION]** |
| | ) |
| REDEYE II, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

Before this Court are the parties' briefs on this Court's authority to enter final orders in the above-captioned adversary proceeding. Defendants Jerry Moyes, J. Kevin Burdette, Redeye II, LLC, Transjet, Inc., Swift Aviation Sales, Inc., Swift Aviation Management, Inc., Swift Aviation Group, Inc., SME Steel Contractors, Inc., Swift Aircraft Management, LLC, Vickie Moyes, the Jerry and Vickie Moyes Family Trust, and Briad Development West, LLC (collectively "Defendants") filed their Brief Regarding Bankruptcy Court's Jurisdiction to Enter Final Judgment[1] and Response Brief Regarding Bankruptcy Court's Jurisdiction to Enter Final Judgment.[2] Plaintiff, MorrisAnderson & Associates, Ltd., the litigation trustee ("Plaintiff") for debtor Swift Air, LLC ("Debtor"),

---

[1] DE 434. "DE" shall refer to the docket entries in this Adversary Proceeding.
[2] DE 446.

1

filed a Position Statement Re: the Bankruptcy Court's Jurisdiction to Enter a Final Order in this Case[3] and Responsive Brief Re: Jurisdiction.[4]

This Court now finds that: (1) as to Plaintiff's breach of fiduciary duty claims, this Court lacks the authority to enter final orders; (2) as to Plaintiff's preference claims under 11 U.S.C. § 547[5], this Court has the authority to enter final orders as to all Defendants; and (3) as to the fraudulent transfer claims brought under §§ 544 and 548, this Court has the authority to enter final orders as to Defendants Swift Aviation Group, Inc. ("SAG"),[6] Swift Aircraft Management, LLC ("SAM"), Transjet, Inc., Transpay, Inc. ("Transpay") and the Transjet Subs (defined below) but lacks the authority to do so for all remaining Defendants.[7]

## I. BACKGROUND

On June 27, 2012, Debtor filed its chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Arizona at case number 2:12-bk-14362-DPC. Defendants Transjet 1, LLC ("Transjet 1"), Transjet 2, LLC ("Transjet 2") and Transjet 3, LLC ("Transjet 3") (collectively "Transjet Subs"), Transpay, SAM and SAG filed proof of claims against the Debtor on November 5, 2012.[8] On June 27, 2014, Plaintiff initiated this Adversary Proceeding, 2:14-ap-00534-DPC.[9] On November 3, 2015, Plaintiff filed the Third Amended Complaint ("Complaint").[10] On November 25, 2015, Defendants filed

---

[3] DE 435.
[4] DE 445.
[5] Unless otherwise indicated, all Section references are to the Bankruptcy Code 11 U.S.C. §§ 101-1532.
[6] SAG was a named defendant in this adversary proceeding ("Adversary Proceeding") but was dismissed by this Court's order of February 13, 2019 (DE 472) because, for the purposes of the claims brought in this Adversary Proceeding, SAG was a mere conduit.
[7] This Court points Plaintiff and Defendants to Federal Rule of Bankruptcy Procedure 8018.1, a Rule that became effective as of December 1, 2018. Rule 8018.1 states: "If, on appeal, a district court determines that the bankruptcy court did not have the power under Article III of the Constitution to enter the judgment, order, or decree appealed from, the district court may treat it as proposed findings of fact and conclusions of law."
[8] Claim Nos. 69 (Transpay), 70 (SAM), 72 (SAG), 73 (Transjet 1), 74 (Transjet 2), and 75 (Transjet 3). Claim 71 was filed by Swift Aviation Services which is not a defendant in this Adversary Proceeding.
[9] DE 1.
[10] DE 94.

their answer ("Answer").[11] On February 15, 2016, Defendants filed their Notice Regarding Bankruptcy Court's Jurisdiction to Enter Final Judgment.[12] On April 2, 2018, the Court entered an Order approving the parties' Stipulation to Dismiss from the Adversary Proceeding Plaintiff's Counts 7 through 11 and defendants Transport Risk Management, Inc., an Arizona corporation, Transpay, Opulent Enterprises, Inc., a North Carolina corporation, Opulent Air, LLC, a North Carolina limited liability company, the Transjet Subs, Teamjet, L.L.C., a North Carolina limited liability company, Teamjet Holdings, L.L.C., a North Carolina limited liability company, Teamjet Enterprises, Inc., a North Carolina corporation, Sports Jet, LLC, a North Carolina limited liability company, Luxury Air, LLC, a North Carolina limited liability company, Luxury Enterprises, Inc., a North Carolina corporation, Jane Doe Burdette, John Doe and Jane Doe 1-10.[13]

As to the Defendants and claims that remain, Plaintiff alleges six counts in three categories: (1) breach of fiduciary duty claims; (2) preference claims brought under § 547; and (3) intentionally fraudulent transfer claims brought under §§ 544 and 548.[14]

On January 10, 2019, the Court issued an Amended Under Advisement Order[15] that addressed Defendants' Motion for Partial Summary Judgment on Count Six of Plaintiff's Complaint (Breach of Fiduciary Duty) and requested that the parties file briefs regarding this Court's authority to enter final orders in this Adversary Proceeding.

## II. ISSUE

Whether this Court has the authority to enter final orders under 28 U.S.C. § 157(b)(1) on the remaining claims alleged in Plaintiff's Complaint or whether this Court

---

[11] DE 95.
[12] DE 106.
[13] DE 266.
[14] Although Counts One and Two of the Complaint also allege claims for avoidance of constructively fraudulent transfers, the parties' Joint Pretrial Statement (DE 463) §§ I(A)(3) and VIII recognize that only intentionally fraudulent transfers are at issue.
[15] DE 429.

must submit proposed findings of fact and conclusions of law to the United States District Court under 28 U.S.C. § 157(c)(1).

## III. ANALYSIS

The district courts of the United States have "original and exclusive jurisdiction of all cases under title 11" pursuant to 28 U.S.C. § 1334(a). District courts are permitted to refer "any and all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The U.S. District Court for the District of Arizona has done so in its General Order 01-15 dated June 29, 2001.

Under 28 U.S.C. § 157, bankruptcy proceedings are classified into two categories and the authority a bankruptcy judge has over a referred matter is largely dependent on the categorization. See 28 U.S.C. § 157(a)-(c). Bankruptcy judges may hear and enter final orders on all "core proceedings" and may submit proposed findings of fact and conclusions of law to the district court for entry of final order for all "non-core proceedings."

In *Stern v Marshall*, the Supreme Court further refined the bankruptcy court's authority to enter final judgments in statutorily defined "core proceedings." *Stern v. Marshall*, 564 U.S. 462 (2011). In *Stern*, the Court held that Article III of the Constitution limits the types of claims a bankruptcy court can enter final judgment upon. *Id.* at 469. Specifically, the Supreme Court determined that a bankruptcy court lacked the Constitutional authority to enter a final order on the state law counterclaim of tortious interference. *Id.* Statutorily core claims over which bankruptcy courts lack Constitutional authority to enter final orders have come to be known as "*Stern* claims."

In *Stern*, the Supreme Court noted that its holding was a "narrow" one. *Id.* at 502 ("[W]e agree with the United States that the question presented here is a "narrow" one.").

That said, the Supreme Court found that Congress exceeded the limits contained in Article III "in one isolated respect" and expressly held that "[t]he Bankruptcy Court lacked the constitutional authority to enter final judgment on *a state law counterclaim* that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503 (emphasis added). In order for a bankruptcy court to issue a final order subject only to appellate review, the proceeding must have more than some bearing on the bankruptcy case. *Id*. at 499. "[T]he question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id*.

Following *Stern*, the Supreme Court held that bankruptcy courts can enter final orders on "*Stern* claims" if all parties to the litigation consent. *Wellness Int'l. Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). If the parties do not consent to the entry of a final order by the bankruptcy court, the bankruptcy court shall treat the matter as a "non-core proceeding" and submit proposed findings of fact and conclusions of law to the district court for entry of judgment after *de novo* review. *Id.* at 1940.

In this Adversary Proceeding there are three categories of claims for which this Court must decide its authority to enter final orders: (1) breach of fiduciary duty claims; (2) preference claims brought under § 547; and (3) intentionally fraudulent transfer claims brought under §§ 544 and 548.

### 1. Breach of Fiduciary Duty Claims

Plaintiff and Defendants agree (and so does the Court) that, under the facts of this case, this Court does not have the authority to enter final judgment on Plaintiff's breach of fiduciary duty claims. These state law claims are denoted as "non-core" under 28 U.S.C. § 157(c). The Court will submit to the District Court its findings of fact and conclusions

5

of law related to Plaintiff's breach of fiduciary duty claims.[16] The District Court will then presumably conduct a *de novo* review of the findings and conclusions and enter final judgment on the fiduciary duty claims.

### 2. Preference Claims

Defendants assert that this Court should issue a report and recommendation as to all Defendants and that the Court lacks the authority to enter final judgment on the preference claims against Defendants who did not file proofs of claim in this bankruptcy case. Plaintiff contends that the Defendants who filed proofs of claim have submitted themselves to this Court's authority. As to those Defendants who did not file proofs of claim, Plaintiff argues that Defendants raised set off defenses and, therefore, have submitted themselves to the claims adjudication process (and the Court's authority to enter final orders).

A creditor who files a proof of claim against a bankruptcy estate does not have a right to adjudication before an Article III court when they are sued on an action in bankruptcy court to recover a preferential transfer. *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990)( holding that any creditor who files a proof of claim against a bankruptcy estate brings themselves within the equitable jurisdiction of the bankruptcy court and does not have a Seventh Amendment right to a jury trial when they are sued in an action to recover a preferential transfer). The Transjet Subs, Transpay, SAG and SAM filed claims against the Debtor in the administrative proceedings before this Court. The Court has authority to enter final judgment against them.

---

[16] By Order dated January 29, 2019 (DE 449), this Court certified to the Arizona Supreme Court two questions: whether members and/or managers of an Arizona limited liability company owe fiduciary duties to that LLC and whether the LLC's operating agreement may limit or eliminate those fiduciary duties.

6

*Stern* applies two distinct criteria to determine a bankruptcy court's constitutional authority to enter final orders. *Stern* at 499. First, does the action stem from the bankruptcy itself? Second, would the claim necessarily be resolved in the claims allowance process?

### a. Preference Claims arise only in Bankruptcy Cases

A preference claim is not independent of federal bankruptcy law. *In re Powers Lake Const. Co., Inc.*, 482 B.R. 803, 805 (Bankr. E.D. Wis. 2012). "Preference claims only exist as a matter of bankruptcy law. The right to recovery under section 547 is both unique and vital to bankruptcy because it serves one of bankruptcy's fundamental goals, the equal distribution of estate property to creditors." *In re Kimball Hill*, 480 B.R. 894, 905 (Bankr. N.D. Ill. 2012). Preference actions originate from the bankruptcy itself and are decided primarily based on the bankruptcy court's *in rem* jurisdiction. *In re Dots, LLC*, 533 B.R. 432, 433 (Bankr. D.N.J. 2015). Accordingly, preference claims meet the first *Stern* criterion.

### b. Preference Claims are part of the Claim Allowance Process

Preference claims directly bear upon the debtor-creditor relationship which bankruptcy is uniquely designed to address. A bankruptcy court must deny a claim of a creditor that is liable to the bankruptcy estate for receiving a preferential transfer. 11 U.S.C. § 502(d). Once the bankruptcy estate collects on the claim, the preference defendant will have a claim against the bankruptcy estate. See generally §§ 502(d) and (h). Given the impact of a preference determination on the claims process, preference litigation meets the second *Stern* criterion.

The Court in *Stern* made clear that the question presented in that case (a bankruptcy court's authority to rule on state law counterclaims) was narrow and that the holding did not meaningfully alter the division of labor between district courts and bankruptcy courts

7

Case 2:14-ap-00534-DPC    Doc 512    Filed 03/15/19    Entered 03/15/19 12:33:21    Desc
Main Document    Page 7 of 15

under the current statute. *Stern* at 502. Several courts have adhered to the Supreme Court's directive that *Stern's* holding should be read narrowly and have limited its application to state law counterclaims that are not part of the claim allowance process. *See In re Paragon Offshore PLC*, No. 17-51882 (Bankr. D. Del. Mar. 11, 2019) where the court held that defendants who did not file claims against the debtor and were later sued on fraudulent transfer grounds arising from a "spinoff" transaction, were the subject of non-*Stern*, core proceedings. The court held that neither *Granfinanceria* nor *Stern* required disposition of these fraudulent transfer claims by an Article III court, therefore, the bankruptcy court may finally adjudicate these fraudulent transfer claims.[17] *See also* In *re DBSI, Inc.*, 467 B.R. 767, 772 (Bankr. D. Del. 2012) (applying a narrow holding of *Stern* to conclude that the bankruptcy court had the authority to enter a final judgment on preference, post-petition transfer, fraudulent transfer and unjust enrichment claims); *In re Apex Long Term Acute Care – Kate, L.P.*, 465 B.R. 452, 458 (Bankr. S.D. Tex. 2011) (determining that after *Stern* most fundamental bankruptcy matters, including preference claims, are within the bankruptcy courts' authority to enter final orders); *In re USDigital Inc.*, 461 B.R. 276, 285 (Bankr. D. Del. 2011) (applying a narrow holding of *Stern* to determine that the bankruptcy court had authority to enter a final order on an equitable subordination claim because, like a preference claim, it is "a unique creature of bankruptcy law.").

      The Supreme Court's admonition as to the narrow scope of *Stern*, together with preference law being a creature of the Bankruptcy Code that bears directly upon the determination of claims against a bankruptcy estate, leads this Court to determine that all the preferential transfer avoidance claims are the type of "core proceedings" over which this Court has the authority to enter final orders, regardless of whether a given Defendant filed a proof of claim in this case.

---

[17] Of course, Judge Sontchi sits in the District of Delaware and is not bound to the Ninth Circuit's ruling in *Bellingham*.

8

This Court finds all Defendants named in Plaintiff's preference claims are subject to this Court's authority to enter final orders on such claims, whether they filed a proof of claim or not.

### 3. Fraudulent Transfer Claims

The Bankruptcy Code provides a bankruptcy trustee with the authority to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim…" 11 U.S.C. § 544(b)(1). This permits a trustee to avoid a transfer of property that is voidable under applicable state law. *In re United Energy Corp.*, 944 F.2d 589, 593 (9th Cir. 1991). "Sections 544 and 548 of the Bankruptcy Code were enacted by Congress to allow a trustee the option of avoiding a fraudulent transfer under either state or federal law.*" In re JTS Corp.*, 617 F.3d 1102, 1111 (9th Cir. 2010).

The Ninth Circuit has held that, when analyzed together, *Stern* and *Granfinanceria*[18] determine that bankruptcy courts lack the authority to enter final judgments on fraudulent transfer claims against parties who did not file a proof of claim in a debtor's bankruptcy case. *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 565 (9th Cir. 2012). The Ninth Circuit noted that, in deciding *Stern*, the Supreme Court looked to *Granfinanciera* which held that a non-creditor has a right to a jury trial when sued by a bankruptcy trustee for avoidance of a fraudulent transfer. In *Granfinanciera*, the Supreme Court equated fraudulent transfer actions by bankruptcy trustees to state-law contract claims which primarily serve to augment the bankruptcy estate instead of restructuring the debtor-creditor relationship. *Granfinanciera* at 56. The court found a trustee's fraudulent transfer claim to be a "matter of private rather than public right" and therefore a fraudulent

---

[18] *Granfinanceria, S.A. v Nordberg*, 492 U.S. 33 (1989).

transfer defendant is entitled to a 7th Amendment jury trial right so long as they invoke that right. *Id.*

While the bulk of the Ninth Circuit's *Bellingham* decision was devoted to determining that fraudulent transfer defendants who do not file claims in a bankruptcy are not subject to the authority of a bankruptcy court, that holding was dicta. *Bellingham* was ultimately resolved by the court's determination that the defendant had implicitly consented to the bankruptcy court's authority by failing to challenge the court's authority until the bankruptcy court's decision was appealed. *Bellingham* at 570. The U.S. Supreme Court affirmed the Ninth Circuit's holding and noted that a bankruptcy court has authority to adjudicate non-core matters where all parties consent. *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014). Although the doctrine of *stare decisis* does not apply to that portion of the 9th Circuit's *Bellingham* decision which is dicta, the Court finds the logic of *Bellingham*, dicta or not, is compelling. Therefore, this Court finds that, absent consent, fraudulent transfer defendants who do not file claims against the bankruptcy estate are not subject to the entry of final orders by a bankruptcy court.

Transpay, SAG, SAM and the Transjet Subs filed proofs of claim in Debtor's bankruptcy case. Resolution of the claims filed by the Transjet Subs, Transpay, SAG and SAM necessarily involves resolution of Plaintiff's fraudulent transfer actions. Since the resolution of Plaintiff's fraudulent transfer claims is intertwined with the claims allowance process (a process which is at the core of a bankruptcy court's authority), the Transjet Subs, Transpay, SAG and SAM are subject to this Court's authority to enter final orders on Plaintiff's fraudulent transfer claims against them.[19]

A bankruptcy court may enter final orders in fraudulent transfer actions against defendants that have not filed proofs of claims, where the parties (i) consent to

---

[19] As noted in Footnote 6 and Section I above, this Court has already dismissed Transpay, SAG and the Transjet Subs from the Complaint.

adjudication by the bankruptcy court or (ii) waive their right to Article III adjudication. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848-49 (1986). The Supreme Court held in *Schor* that the right to adjudication before an Article III court is a "personal right" and is subject to waiver. *Id.* Such consent to adjudication by a non-Article III court does not need to be express but must be knowing and voluntary. *Wellness at* 1937. The crucial question is whether "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case" before the non-Article III adjudicator. *Roell v. Withrow*, 538 U.S. 580, 590 (2003). Implied consent is established when a party is aware of the ability to challenge a non-Article III court's authority and fails to do so, instead choosing to litigate before the non-Article III court. *Bellingham* at 569. Implied consent can likewise be found in a fraudulent transfer case and not only when a party extensively litigates a case while failing to raise that party's concern over the extent of the bankruptcy court's authority to enter final orders. *In re Pringle*, 495 B.R. 447, 458 (B.A.P. 9th Cir. 2013). Implied consent has been found when a defendant failed to object to the bankruptcy court's jurisdictional authority before the judgment was entered against them. *Mann v. Alexander Dawson, Inc. (In re Mann)*, 907 F.2d 923, 926 (9th Cir. 1990).

The question for this Court is which Defendants, if any, explicitly or implicitly consented to this Court's authority to enter final orders in this Adversary Proceeding.

Contrary to Plaintiff's contention, the Court need not determine whether all Defendants submitted to this Court's authority when they made a setoff argument[20] in response to Plaintiff's preference summary judgment motion. Not all Defendants made that setoff argument. Only Transjet, Inc. did so. Transjet, Inc. could not alone have submitted other Defendants to this Court's authority. Although the Court rejected Transjet,

---

[20] DE 435.

Inc's setoff argument, by raising this argument,[21] the Court does find that Transjet, Inc. implicated the bankruptcy Court's claims allowance process, thereby submitting itself (and only Transjet, Inc.) to this Court's authority.

The remaining fraudulent transfer Defendants have not explicitly consented to this Court's authority to enter final orders nor have they overtly waived their rights to adjudication before an Article III judge. Significantly, Defendants' answer to the Complaint states:

> Defendants do not concede Plaintiff's designation of this matter as core and Defendants reserve their right to object to the jurisdiction of this court as to both alleged core and non-core matters. Nothing herein shall be deemed consent to this Court's jurisdiction, nor should anything herein be deemed a waiver of Defendants' right to seek to withdraw the reference or object to this Court's jurisdiction. Defendants reserve all rights with respect thereto.[22]

During the course of this Adversary Proceeding, all Defendants have maintained that this Court lacks authority to enter final orders against them. This was confirmed when, on February 15, 2016, Defendants again raised the authority issue.[23] Since Plaintiff filed the Complaint, Defendants have steadfastly requested that this Court enter reports and recommendations to the District Court instead of final orders. Defendants have also insisted on language in this Court's orders consistent with their position challenging this Court's authority to enter final orders, even when Defendants' received favorable rulings from this Court.[24]

Plaintiff suggests that Defendants failed to request a jury trial in this Adversary Proceeding and, therefore, should be barred from challenging this Court's authority to enter final orders because they waived their 7th Amendment rights to a jury trial. Plaintiff

---

[21] DE 380, pp. 21-23. This pleading was filed on October 16, 2018, over six months after the Transjet Subs and others were dismissed from the Complaint.
[22] DE 95, p.3, FN 1.
[23] DE 106.
[24] See DE 398, Defendants' Statement of Position Regarding Trustee's Proposed Order Granting in Part, and Denying in Part, Defendants' Motion for Summary Judgment.

12

contends that the *Granfinanciera* decision concerned a defendant's 7th Amendment jury trial rights, that *Stern* and *Bellingham* equated 7th Amendment rights with the right to have their defenses tried by an Article III judge, and therefore, when a party defendant waives their right to a jury they also waive their right to trial before an Article III court. In this Adversary Proceeding, it is true that Defendants never requested a jury trial. To do so, Defendants would have had to request a jury trial pursuant to Bankruptcy Rule 9015. However, this Court concludes that failing to request a jury trial in this Adversary Proceeding is not indicative of Defendants' consent to entry of final orders by a non-Article III Court. Consenting to a bench trial (i.e. waiving one's 7th Amendment right to a jury trial) is not tantamount to consenting to a bench trial before an Article I court. These are distinctly separate rights. Defendants' right to adjudication by an Article III court of their defenses to Plaintiff's fraudulent transfer claims remains intact notwithstanding a waiver of their rights to a jury trial. A right to a jury trial is an apple. A right to Article III adjudication is an orange. Waiver of one does not waive the other.

Plaintiff further contends that the involvement of some Defendants in the administrative portion of Debtor's bankruptcy amounts to implied consent or waiver by some or all of the Defendants. This Court disagrees. First, not all Defendants participated in the administrative portion of Debtor's bankruptcy case; only SAM, SAVM, Transjet 1 and Transjet 2 appeared in the Debtor's bankruptcy prior to Plaintiff's commencement of this Adversary Proceeding.[25] Those appearances could not waive the rights of other Defendants to adjudication by an Article III court. Even as to the Defendants that did appear in the administrative case, this Court finds that participating in the administrative portion of a bankruptcy case (while not filing a claim to invoke the claims allowance process) does not waive that participant's right to adjudication by an Article III court in a subsequent adversary proceeding brought against them.

---

[25] See DE 435, p. 8, line 16 to p. 9, line 2.

13

This Court concludes that Defendants' Answer to Plaintiff's Complaint timely challenged this Court's authority to enter final orders. Other than Transjet, Inc., at no time after Defendants' Answer did they then consent to this Court's authority or waive their earlier challenge to this Court's authority to enter final orders in this Adversary Proceeding. All Defendants who did not file claims in this case and did not assert a set off defense have preserved their right to a trial of their fraudulent transfer defenses before an Article III court.

Other than Transjet, Inc., the Transjet Subs, Transpay, SAG and SAM, all other fraudulent transfer Defendants will be the subject of this Court's proposed findings of fact and conclusions of law which will be submitted in a report and recommendation to the District Court for its *de novo* review and entry of final judgment.

## IV. CONCLUSION

Based on the discussion above and Federal Rule of Bankruptcy Procedure 9033, this Court determines that: (1) as to Plaintiff's breach of fiduciary duty claims, this Court lacks the authority to enter final orders. The Court will submit proposed findings of fact and conclusions of law in the form of a report and recommendation to the District Court for *de novo* review and entry of final judgment; (2) as for Plaintiff's preference claims under § 547, this Court has the authority to enter final orders as to all Defendants; and (3) as to Plaintiff's fraudulent transfer claims brought under §§ 544 and 548, this Court has the authority to enter final orders as to Transjet, Inc., the Transjet Subs, Transpay, SAG and SAM, but lacks the authority to do so for all other fraudulent transfer Defendants. As to those other fraudulent transfer Defendants, the Court will submit proposed findings of fact

and conclusions of law in the form of a report and recommendation submitted to the District Court for *de novo* review and entry of final judgment.[26]

**IT IS SO ORDERED**.

**DATED AND SIGNED ABOVE.**

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to interested parties.

---

[26] This is a non-appealable interlocutory Order of this Court.